**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Custom Conveyor Corporation,

                        Plaintiff,         Civ. No. 16-3835 (RHK/HB)
                                             **MEMORANDUM OPINION**
                                             **AND ORDER**

v.

Gregory Hyde, *et al.*,

                        Defendants.

---

Mark V. Steffenson, Henningson & Snoxell, Ltd., Maple Grove, Minnesota, for Plaintiff.

Randall E. Kahnke, Martin S. Chester, Marjan A. Batchelor, Faegre Baker Daniels LLP, Minneapolis, Minnesota, for Defendant Gregory Hyde.

---

**INTRODUCTION**

     Defendant Gregory Hyde previously worked as a sales representative for Plaintiff Custom Conveyor Corporation ("CCC"), a Minnesota company that manufactures water and wastewater treatment systems. In 2016, Hyde, who resides in Georgia, accepted a position with Defendant Jim Myers & Sons, Inc. ("JMS"), one of CCC's direct competitors. CCC then commenced this action, alleging *inter alia* claims for misappropriation of trade secrets, conversion, and tortious interference with contract. Presently before the Court is Hyde's Motion to Dismiss for lack of personal jurisdiction. For the reasons that follow, the Court will deny the Motion.

## BACKGROUND

Hyde has resided in Georgia since 1956.  In 2011, he interviewed with CCC in Minnesota after learning of a job opening through a colleague.  The company later hired him as a sales manager, marketing and selling its products in various parts of the United States, although not in Minnesota.

Hyde spent five years working as a CCC sales manager; during that time, he performed his duties from a home office and other locations in Georgia.  His job involved only occasional travel to Minnesota (albeit sometimes for several days at a time) yet required near constant communication with CCC's Minnesota-based employees.  According to records reviewed by Roger Hansen, CCC's Chief Financial Officer, Hyde exchanged more than 24,500 emails with CCC's Minnesota personnel during his employment, an average of nearly 14 per day.  Similarly, CCC's records reflect 851 phone calls between Hyde and Minnesota-based CCC employees during just his final year of employment, averaging three calls per day and 22 minutes per call.

In April 2016, Hyde resigned from CCC and accepted a position with one of its competitors, North Carolina-based JMS.  Several months later, CCC commenced this action in the Hennepin County District Court, which Defendants removed to this Court.  The Complaint alleges that by virtue of his employment with CCC, Hyde became privy to the company's proprietary information, including its unique, "customized pricing scheme" that purportedly gives it a competitive advantage over others (such as JMS) in the marketplace.  It further alleges that Hyde used external hard drives and cloud-based storage to copy this proprietary information from CCC's computer systems.  And, it

alleges that Hyde has disclosed this information to JMS, which has used it to obtain projects on which CCC also was bidding. Among other things, CCC seeks an injunction prohibiting dissemination of its (alleged) trade secrets, the return of any proprietary information held by Hyde or JMS, and an award of damages.

Hyde now moves to dismiss the claims against him for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). His Motion has been fully briefed and is ripe for disposition.

## STANDARD OF REVIEW

In order to survive Hyde's Motion, CCC must make only a prima facie showing of jurisdiction. E.g., Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 647 (8th Cir. 2003). This requires it to proffer "sufficient facts . . . to support a reasonable inference that [Hyde] can be subjected to jurisdiction within [Minnesota]." Creative Calling Solutions, Inc. v. LF Beauty, Ltd., 799 F.3d 975, 979 (8th Cir. 2015) (citation omitted); accord, e.g., Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc., 702 F.3d 472, 475 (8th Cir. 2012) (citations omitted). CCC's showing "must be tested[] not by the pleadings alone, but by the affidavits and exhibits presented with the motion[] and in opposition thereto." Dairy Farmers, 702 F.3d at 475 (citations omitted). Where, as here, the Court has not held an evidentiary hearing, it must "look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party." Pangaea, Inc. v. Flying Burrito LLC, 647 F.3d 741, 745 (8th Cir. 2011) (citation omitted). "The evidentiary showing required at the prima facie stage is minimal." Johnson v. Arden, 614 F.3d 785, 794 (8th Cir. 2010) (citation omitted).

## ANALYSIS

To establish a prima facie case of personal jurisdiction, CCC must show that Minnesota's long-arm statute has been satisfied and that exercising jurisdiction would comport with the Due Process Clause of the Fourteenth Amendment.  E.g., Creative Calling Solutions, 799 F.3d at 979.  These two inquiries collapse into one, however, because Minnesota's long-arm statute extends jurisdiction to the outer limits of the Due Process Clause.  E.g., Guinness Import Co. v. Mark VII Distribs., Inc., 153 F.3d 607, 614 (8th Cir. 1998); Soo Line R.R. Co. v. Hawker Siddeley Can., Inc., 950 F.2d 526, 528 (8th Cir. 1991).

Due process requires that Hyde have sufficient "minimum contacts with [Minnesota] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Daimler AG v. Bauman, __ U.S. __, 134 S. Ct. 746, 754 (2014) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  This means he must have "fair warning" that his Minnesota contacts "may subject [him] to . . . jurisdiction" here.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (citation omitted); accord, e.g., Creative Calling Solutions, 799 F.3d at 980 (defendant's contacts must permit him to "reasonably anticipate being haled into court" in foreign state).  The "fair warning" requirement will be met if Hyde "has 'purposefully directed' his activities at residents of [Minnesota], and the litigation results from alleged injuries that 'arise out of or relate to' those activities."  Burger King, 471 U.S. at 472-73 (citations omitted).  In other words, his Minnesota contacts "must not [have] arise[n] due to mere fortuity,"

Pangaea, Inc., 647 F.3d at 745, but rather he must have "purposefully availed himself of the benefits and protections of th[is] state," Johnson, 614 F.3d at 794.

In order to determine whether Hyde has sufficient minimum contacts with Minnesota, the Court must consider five factors: (1) the nature and quality of his Minnesota contacts; (2) the quantity of those contacts; (3) the relationship between CCC's claims and the contacts;[1] (4) Minnesota's interest in providing a forum for CCC; and (5) the convenience of the parties. E.g., Johnson, 614 F.3d at 794; Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004). The first three factors are of primary importance, while the remaining two are secondary. Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996). The Court must consider these factors in the aggregate rather than simply counting the number of factors suggesting jurisdiction does or does not exist. E.g., Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995) ("In determining whether there is personal jurisdiction, . . . courts . . . look at the totality of the circumstances.").

Hyde argues that the three "primary" factors – the nature and quality of his Minnesota contacts, the quantity of those contacts, and the relationship between them and CCC's claims – do not support the exercise of jurisdiction over him in this state. He notes that although he was employed and paid by a Minnesota company, none of his

---

[1] This factor distinguishes "specific" jurisdiction from "general" jurisdiction. Specific jurisdiction exists for causes of action that arise out of a defendant's contacts with the forum state, while general jurisdiction is broader, reaching *any* cause of action against a defendant with "continuous and systematic" forum contacts. Daimler AG, 134 S. Ct. at 754 (citation omitted). Here, CCC argues that Hyde is subject to both general and specific jurisdiction in Minnesota. The Court need not reach the arguments concerning general jurisdiction, however, as it concludes specific jurisdiction has been established here.

customers were located here, and none of his duties were performed in this state.  (Def. Mem. at 7.)  He further notes that he traveled here infrequently ("never more than two or three times per year" (id.)) and that his contacts with Minnesota were by telephone and email, which courts have generally deemed insufficient to establish jurisdiction.[2]  And, he argues there is an insufficient nexus between his Minnesota contacts and CCC's claims, which allege he disclosed trade secrets while in Georgia to a North Carolina-based competitor of CCC.  (Id. at 9.)

To be sure, Hyde's argument is superficially appealing, particularly as the Supreme Court has taken a narrower view of specific jurisdiction in recent years.  See, e.g., Walden v. Fiore, __ U.S. __, 134 S. Ct. 1115 (2014).  Yet, a case with strikingly similar facts decided by the Minnesota Court of Appeals barely three months ago counsels that his Motion must be denied.  Given the overwhelming similarities, the facts of that case, Patterson Dental Supply, Inc. v. Vlamis, No. A16-0399, 2016 WL 4596881 (Minn. Ct. App. Nov. 15, 2016), review denied (Minn. Nov. 15, 2016), are block-quoted below:

> Respondent Patterson Dental Supply, Inc. (Patterson) is a corporation with its principal place of business in Minnesota.  Appellant Theodore Vlamis lives in Pennsylvania and worked for Patterson for 17 years in Scranton, Pennsylvania, as a branch manager.  In August 2015, Vlamis voluntarily terminated his employment with Patterson to work for Patterson's primary

---

[2] See, e.g., Eagle Tech. v. Expander Americas, Inc., 783 F.3d 1131, 1137 (8th Cir. 2015) ("[T]elephone calls, written communications, and even wire-transfers to and from a forum state do not create sufficient contacts to comport with due process such that a foreign corporation could reasonably anticipate being haled into court there.") (internal quotation marks and citations omitted); Fastpath, Inc. v. Arbela Techs. Corp., 760 F.3d 816, 823 (8th Cir. 2014) ("Arbela directed some emails and phone calls to Fastpath in Iowa, but the district court correctly determined that this activity was insufficient to establish personal jurisdiction.").

competitor in the dental market[, which was headquartered in New York]. Patterson alleges that Vlamis misappropriated confidential and proprietary information using his Patterson e-mail address to send information to his personal e-mail address upon the termination of his employment, and that Vlamis used removable storage devices and a personal Internet cloud storage account to copy, store, and access Patterson's confidential and proprietary information and trade secrets from a laptop computer provided to him by Patterson's Minnesota office.

In October 2015, Patterson filed a lawsuit against Vlamis in Ramsey County alleging four causes of action: (1) misappropriation of trade secrets; (2) conversion; (3) breach of duty of confidentiality; and (4) breach of duty of loyalty. Patterson also sought injunctive relief prohibiting Vlamis from using or disclosing Patterson's confidential and proprietary information and trade secrets and requiring the return of the information. Vlamis moved to dismiss the lawsuit on the basis that the Minnesota court lacked personal jurisdiction over him because his only contacts with Minnesota occurred solely in his capacity as a Patterson employee. The district court denied Vlamis's motion.

The facts as they relate to personal jurisdiction are as follows. Vlamis's contacts with Minnesota are limited to contacts through his employment with Patterson. Vlamis never resided, owned property, had a bank account, or engaged in personal business activities in Minnesota. While employed by Patterson, Vlamis's sales territory was limited to Pennsylvania, New Jersey, and New York. Vlamis never solicited customers, marketed products, or made sales in Minnesota. However, while employed by Patterson, Vlamis visited Minnesota approximately 14 times, including a four-week-long training in 1999, and annual managers' meetings beginning in 2004. Patterson alleges that it shared strategic and confidential business and customer information with Vlamis at the annual managers' meetings in Minnesota. Patterson further asserts that it generated confidential and proprietary information and loaded this information onto a laptop in Minnesota. There is no record of Vlamis being physically present in Minnesota when he allegedly e-mailed himself and used a removable storage device to obtain the confidential and proprietary information.

Id. at *1.

After reviewing these facts, the Minnesota Court of Appeals affirmed the lower court's decision to deny Vlamis's motion to dismiss for lack of personal jurisdiction. It

rejected Vlamis's argument that his contacts with Minnesota were "less than minimal," pointing out that he occasionally traveled to this state for work and that he had "direct and consistent contact with [Patterson's] Minnesota office." Id. at *4.  Because Vlamis "communicated almost daily" with that office, "received compensation and benefits paid from Minnesota," traveled here from time to time, and was supervised from Minnesota, Patterson concluded "the quantity, nature, and quality of Vlamis's contacts support the exercise of jurisdiction." Id.  Furthermore, there was a strong connection between Vlamis's Minnesota contacts and Patterson's claims, since the information allegedly misappropriated by Vlamis was provided from Patterson's Minnesota offices, and Minnesota had a strong interest in providing a forum for the lawsuit, as the case "involve[d] an alleged injury to a Minnesota resident" (Patterson).  Id.  Finally, Patterson rejected the argument that the convenience of the parties militated in favor of dismissal, concluding that "Pennsylvania is not so far away that requiring Vlamis to travel to Minnesota makes jurisdiction unreasonable." Id. at *5.  The relevant factors, therefore, supported the exercise of personal jurisdiction over Vlamis in Minnesota.

The Court perceives no principled reason to reach a different result here.  Echoing Vlamis, Hyde argues that his contacts with Minnesota "were minimal" (Def. Mem. at 7), but just like Vlamis, Hyde traveled to this state on occasion for work and had extensive, daily communications with Minnesota-based CCC employees.[3]  Hyde also argues, like

---

[3] Hyde argues the Court should not consider these contacts because they were undertaken during the course of his employment, and hence they were attributable to *CCC* rather than *him*. (Reply at 10 (invoking the "fiduciary shield" doctrine espoused in Arkansas Rice Growers Cooperative Ass'n v. Alchemy Industries, Inc., 797 F.2d 565, 574 (8th Cir. 1986), for the proposition that "a

Vlamis, that the quality of his contacts were insubstantial given that his sales territory did not include Minnesota, an argument equally rejected by Patterson given Vlamis's multi-year employment by, and payment from, a Minnesota company.  And, like Vlamis, Hyde argues that his claims lack a sufficient connection to Minnesota because he (allegedly) misappropriated trade secrets out of state and (allegedly) disclosed those trade secrets to a North Carolina company, which used them to prepare bids submitted outside of Minnesota.  Patterson rejected this argument too, as the allegedly misappropriated information was provided from a Minnesota company, and hence there existed a substantial nexus between Vlamis's Minnesota contacts and Patterson's claims.[4]  Simply put, Patterson is on all-fours with this case and undermines Hyde's arguments.

For these reasons, the Court concludes that personal jurisdiction exists over Hyde in Minnesota.  But this is perhaps not a surprising result.  As discussed above, the

---

corporate . . . agent who has contact with the forum state only with regard to the performance of corporate duties does not thereby become subject to jurisdiction in his or her individual capacity").)  That view, however, runs contrary to the admonition of the Supreme Court, which has "reject[ed] the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity."  Calder v. Jones, 465 U.S. 783, 790 (1984); see also Patterson, 2016 WL 4596881, at *3 (disagreeing "that Arkansas Rice Growers stands for the premise that an employee's contacts with a forum at the direction of a corporation cannot be the basis for establishing sufficient minimum contacts to exercise jurisdiction").

[4] Hyde correctly notes that the Minnesota Court of Appeals has recognized that an "employment relationship between a nonresident employee and a Minnesota corporation does not, alone, satisfy minimum contacts requirements."  (Reply at 7 (quoting Smarte Carte, Inc. v. Van Tran, No. C4-96-1022, 1996 WL 689782, at *2 (Minn. Ct. App. Dec. 3, 1996)).)  The key word in this quote is "alone."  Here, Hyde had persistent contact with CCC in Minnesota, purportedly gained confidential information in the course of those contacts, and then allegedly disclosed the information to a competitor, causing harm to a Minnesota company.  See Robinson Worldwide, Inc. v. FLS Transp., Inc., 772 N.W.2d 528, 537 (Minn. Ct. App. 2009) (distinguishing Smarte Carte because "[t]here was insufficient evidence in [that case] that . . . contacts with the employer were regular and ongoing").

touchstone of the due-process inquiry is whether a defendant's forum contacts should put him on notice that he might be sued in the forum state.  See, e.g., Burger King, 471 U.S. at 472; Creative Calling Solutions, 799 F.3d at 980.  Hyde worked for more than five years for a Minnesota-based company, with which he was in nearly constant contact; (allegedly) obtained trade secrets from the company over that span; and then, after resigning his employment, (allegedly) disclosed those secrets to a competitor.  In this Court's view, an employee undertaking such conduct should not be surprised that he might be sued in, and subject to the jurisdiction of, the state in which his former employer is located.  Indeed, courts have routinely reached that same conclusion.  See, e.g., Patterson, 2016 WL 4596881, at *3-5; Commissioning Agents, Inc. v. Long, 143 F. Supp. 3d 775, 792 (S.D. Ind. 2015); Vizant Techs., LLC v. Whitchurch, 97 F. Supp. 3d 618, 631-32 (E.D. Pa. 2015); C.H. Robinson Worldwide, Inc. v. XPO Logistics, Inc., No. A13-1797, 2014 WL 2565690, at *5-7 (Minn. Ct. App. Aug. 19, 2014); Dayton Superior Corp. v. Yan, 288 F.R.D. 151, 167 (S.D. Ohio 2012); VAS Aero Servs., LLC v. Arroyo, 868 F. Supp. 2d 1374, 1380 (S.D. Fla. 2012); C.H. Robinson Worldwide, Inc. v. FLS Transp., Inc., 772 N.W.2d 528, 537-38 (Minn. Ct. App. 2009).

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, it is **ORDERED** that Hyde's Motion to Dismiss (Doc. No. 7) is **DENIED**.

Date:  February 22, 2017                    s/Richard H. Kyle
                                            RICHARD H. KYLE
                                            United States District Judge